May I please the court? My name is Hilton Napoleon. I have the pleasure of representing the appellate, Susan Khoury, who is present in court along with Joe Clott. Your Honors, this case is about a 56-year-old former law enforcement officer who was thrown into a First Amendment right to record a police officer. After her incident, she saw articles where the school board had developed a custom, a policy, or a practice of bank-correcting individuals who did not qualify. The lower court erred in Granton's summary judgment for three particular reasons. First, which I think is pretty clear from the record, that the lower court construed the facts in a light most favorable to the school board and Officer Ms. Khoury. Mr. Napoleon, may I ask you a question? Because I've watched the video, the videos, two of them, several times. And I just want to get some of the facts straight before I ask a few other questions. My understanding from reading the deposition testimonies was that Ms. Khoury had an agreement with the school board, and it wasn't just Ms. Khoury but also the neighbors, that those gates would be locked. That was the understanding. And Officer Williams in his deposition testified that he did not know, even though Ms. Khoury was trying to tell him that he did not have authority to open those gates, which in fact was accurate, that he did not have the authority to open those gates. But he did not do any Your Honor, that is what he said. I'm not sure necessarily if that's the case. Part of the issue, Your Honor, I believe is that our claim is that he fabricated facts. And including if you look at the video and you watch it very carefully, he said that he unlocked the gate so that he can allow students to come in so that they wouldn't have to hop the fence or people on the baseball field. When you look at that video, there's nobody around. There are no people coming back and forth in that particular atmosphere. There's no one around. There are other things to show that he purely fabricated. Like, for example, he claimed that all the cars were legally parked. You can clearly see in the video that there was a gray minivan that's parked the wrong way in the street. Well, the issue here, we're on a summary judgment, and so the question is whether or not there are genuine issues of material fact that should go to the trier of fact. And so for purposes of the order that Judge Scola entered, he made a determination that one of the reasons that Officer Williams said that he bakeracted your client was because in essence she was delusional that he was not an officer because she kept asking for Metro Day to be called. But in fact, the video shows objectively, as Judge Scola indicated in his order, that she identified him as an officer. Hello, officer, can you tell me your name in the video? And in the second video where she is being detained and she's asking for people to call 911, when someone says he's an officer, she says, yes, but he's a school board officer. Your Honor, I think you hit the nail on the head, and Judge Scola specifically recognized that those facts were disputed. He put that in his order. He put the fact that she contested that she exhibited the behaviors that Officer Williams claimed that she had. He acknowledged the fact that Miss Corey stated that she did not push Officer Williams, and he even stated, as Your Honor pointed out, that the video objectively showed that Miss Corey understood who he was. But even though he ruled that way or made those findings, he ruled that for some reason Officer Williams had arguable probable cause, which I don't believe that he did. And from the Kingsland cases, which is one of our points, when an officer fabricates probable cause, then that officer is not entitled to qualified immunity. And that was our point. And there are other things that, Your Honor ... The issue here is, should the issue of whether or not the officer has qualified immunity, should that go to a trier of fact because there are issues in dispute? Absolutely. And we raised those issues below. We raised that issue in our brief that those are genuine issues of material ... Well, let me ask you a question, and I'm going to ask the other side the same question. With respect to qualified immunity, you have to have a statutory or a constitutional right that is clearly established. Yes. And obviously under the Baker Act, that is a statute. It's a statutory right. It's not new in Florida. Police know about it. Right. And one of the criteria ... I mean, in order to Baker Act someone as a law enforcement officer, there has to be criteria that is met. And in this case, the only criteria that could be the reason to Baker Act her, which was that either she was a harm to herself or a harm to others. But it has to be at that moment in time, not in the future and not in the past. What evidence was there that she was a harm to herself or a harm to others? Judge, unless recording with a cell phone can somehow harm someone, there is no evidence. And that was exactly our point. There is absolutely no evidence. She wasn't wielding the phone. She wasn't doing anything except recording his police car. How close to probable cause do you have to be to establish arguable probable cause? I mean, that's a pretty exceptionally low standard. Some may say too low, but how close do you have to be? Well, I don't think that there is ... I think you just have to base it on the totality of the circumstances. I think as far as obviously it's a lower standard, but this one doesn't even come close because he fabricated the facts that would even give him arguable probable cause. There was no cause whatsoever to Baker Act her on that particular day. I've got a question for you about the other half of your argument, which is the policy and custom. Let's say for purposes of argument that you've established that in 2012 there was a policy on the part of the Miami-Dade School Board to Baker Act instead of arrest. How much evidence once you've established ... or let's even say this. Let's say that someone else established in a different case that a different policy was in effect in 2010. So there is a policy. Factually, we all agree it was in effect in 2010. How much do you have to show that it's still in effect in 2020? I understand what you're asking. So you're basically asking how much evidence is sufficient evidence to show that there still is a widespread custom policy or practice. Exactly. I believe that it's on a case by case basis. There are some cases that said two in 13 months is not enough. There are other ones that says that in a span of a couple of years there are some. I'm going to answer your question, but I want to point out one thing that's very, very important here. We also are moving on the fact that there was an actual policy because the former Chief Hurley stated that, quote, we're going to Baker Act people even if it's unwarranted. We have statements like that from the whistleblowing officers and also Frank Zaneri, who was a school psychologist, who basically said that they told people to the report came out said that there was no validity to that and so did Chief Moffitt. But neither one of those individuals reviewed the reports other than for statutory compliance. The issue wasn't statutory compliance. The issue was whether or not they were fabricating reports. I don't understand how they can conduct an investigation and without speaking to people who actually were committing the Baker Acts or maybe some of the students or the teachers. This was kind of a wink, wink, nod, nod. Hey, I think there's sufficient evidence as far as the policy is concerned where a jury can find that the statements by Chief Kitchell and Chief Moffitt were just not credible and that was the school board's policy because Chief Moffitt confirmed after he watched the very same videos that we produced to you that Officer Williams, Baker Act, and Ms. Corey, pursuant to the policy, as far as the custom or the practice is concerned, as far as the number. I really believe that the school board should be a stop for making that argument because from the briefs and from the record, you can see every single point of the way I had to file a public records request and also bring it into federal court just to get the Baker Act reports. They provided us with redacted copy of Baker Act reports and every time I tried to take any type of deposition or speak to anyone, they threw up all these role blocks. So, their position basically is she can't have access to the potential witnesses, but she needs those very same witnesses to show a widespread practice of constitutional violations and I raised it below and I raised it again here. They should not have been allowed to make that argument because every step of the way, they prevented us from gaining discovery and that's to prove it. Doesn't the magistrate judge have a particular range of authority to manage the competing concerns of confidentiality for students or for other Baker Act detainees versus your client's need for discovery? There's got to be, I think, some range where the magistrate judge set discovery parameters. Absolutely. The magistrate judge has a right to confine discovery, but in a case where there is a constitutional violation, there's a widespread practice of constitutional violations. If you don't allow a widespread latitude of some form of discovery, it's impossible to meet the court standard to show that there's a widespread practice, but as far as the magistrate is concerned, every time that the issue was raised, the magistrate never addressed any of the legal arguments that we put forth before the magistrate. We put forth evidence that the Baker Act statute in and of itself allowed for disclosure of the reports, and we also cited several cases where the magistrate could have tailored some parameters as far as depositions that could have been concerned. Like, for example, they could have limited the amount of time that I could have deposed the minors. I know you made those arguments to the magistrate. I don't think you've challenged the substance of the discovery orders here, but correct me if I'm wrong. The substance of the discovery orders? Right. If the problem is that the magistrate's orders misinterpreted the Baker Act, wouldn't that be a legal appeal that you could have raised first the district court and then here? I did raise it in the district court. We appealed the magistrate's ruling, and we did ask for, I know that I'm running out of time, but we did ask for the district court to look at the magistrate's order, and that is also in the record, and the district court basically said, without citing any law, that the magistrate properly balanced the privacy issues, but there was no law, there was no ruling whatsoever, there was no cases that were cited. You haven't appealed that. I'm sorry? You haven't appealed the district court's decision on that issue here, have you? I believe that that is point three that's actually raised in the brief where we stated that the district court erred in precluding Ms. Corey from accessing unredacted Baker Act reports. Thank you. Thank you. Good morning. May it please the court. Good morning, Enrique Arana and Rachel Ustendorp on behalf of the appellees. Your honors, the court properly granted summary judgment to the school board and the Monell issue. In order to establish a Monell claim- Counsel, can you instead start with how the trial court entered summary judgment properly against Ms. Corey and in favor of Officer Williams? Absolutely. The issue is whether, on the undisputed record, there was arguable probable cause to Baker Act, Ms. Corey. And based on the totality of circumstances, there's no question that that was the case. Okay. Well, tell me exactly what the totality of the circumstances is, because this is his testimony. You understand under Baker Act, correct, that in order to have even arguable probable cause, you have to know that the person is a danger to themselves or a danger to others at that moment, correct? Correct. That's the standard. Which a reasonable officer could include that. And under the cases like May and others that are from the 11th circuit, those are cases where there was this individual who there was a call, the officers were responding to either an email that pertained to suicide, or there was a relative who called the police to say, my relative is in danger of committing suicide. So there was at least some evidence of harm. Here, this is your client's testimony. Did she ever make any threats to you or anyone else? Did she make any verbal threats, like I'm going to harm you, I'm going to hurt you? No, she never made any verbal threats to me. Did she ever make any verbal threats that she was going to harm herself? No. Did she have any weapons on her? No. Did she ever say that she had a weapon or anything else like that? No. Did she never make threats to anyone else who was around that area? Not in my presence. Did you hear her make a threat to anyone in that area? No. You didn't see her approach anyone in a threatening manner? No. So what evidence, again, counselor, is there that she intended to either harm herself or harm others on the day that she was Baker-acted? On that day, Ms. Zubiaga called the police because Ms. Khoury was, had approached her, and videotaping her in her car, and according to Ms. Zubiaga, being aggressive and combative. And you understand that there's case law in the state of Florida that being belligerent is not enough to be Baker-acted. Again, the criteria is you need to be a harm to yourself or a harm to others. Understood. Understood. And the trial court properly considered the totality of the circumstances and determined that a reasonable officer in Mr. Williams' position could have made that conclusion. In fact, there was a second officer. At what point do you say that she posed an arguable risk of harm to herself or others? Well, I think that, again, it's under the totality of circumstances. However, Mr. Officer Williams testified that he made that conclusion when, towards the end of the encounter, when he was trying to pick up Ms. Khoury from the ground. She was screaming. I saw the video. She was screaming false arrest. Claiming that she was being harassed. Claiming that she was being attacked. And she clearly was not. In fact, Judge Scola made a ruling that she was not being attacked, that the plane... And Judge Scola also made a ruling that even though the video objectively showed that she understood that he was an officer because, in fact, she called him an officer, that she was, in essence, delusional. And perhaps she was hallucinating and she didn't know that he was an officer. Is that not a credibility determination that the trial court made? No, the judge accepted that Ms. Khoury understood that he was a police officer. The judge said even accepting that, under the totality of the circumstances, is a reasonable basis for an officer to conclude. So there's more. How could he have possibly have concluded that there was any evidence that she didn't know he was an officer? Because that's one of Officer Williams' testimony, was that I thought that she had something wrong with her because she kept saying, call 911, call Metro. And so she didn't understand that I was an officer. Well, Officer Williams believed that to be the case, but Judge Scola said... How did he believe that to be the case? Because when you watch the video, again, isn't this a credibility determination that a trier of fact should make? Because when you watch the video, it shows he may think that... He can testify to that in front of a jury, and then the jury can make and watch the video and see that, in fact, what she's saying is false arrest, call 911, call Metro-Dade, because she lives in Metro-Dade, and that's the police jurisdiction that should be there, in order... Because she's claiming that this officer is exceeding his jurisdiction and exceeding his authority and detaining her falsely. And she was screaming that he was harassing her and attacking her, and that was not the case. And in fact, the other officer... Well, isn't that something, again, for a trier of fact to determine? Because at the end of the day, a trier of fact may decide and say that that was excessive force. That's one of the claims, is it not? There is an excessive force claim, and the court properly entered summary judgment on that, because once Officer Williams made the decision that there was probable cause to arrest... That assumes that there's qualified immunity. Assuming there was probable cause... If there's no qualified immunity, then a trier of fact can decide for themselves whether or not that was excessive force that was used, correct? I would agree, Your Honor. Assuming there was arguable probable cause, then the amount of force that was used was clearly consistent with the case law. Can an officer use the person's reaction to being detained as an excuse for that initial detention? I think it's part of the total picture. And if I could just explain, I think it's important to realize that Officer Williams was called because of a complaint from a resident that Ms. Khoury was being aggressive and combative,  Ms. Zubilaga is not a resident. She is a parent who is part of that league, but she does not live in the area because her affidavit states otherwise. From the complainant, my apologies, from the complainant. Now, Officer Williams also heard from other witnesses there, and here's what he testified about that. This is at page 79 to 80 of his deposition. They were saying they were all frustrated and that they were tired of this ongoing situation, that every time they arrived to the park with their children, she comes out of nowhere, she's taking pictures, she's videotaping, and it was disturbing because they don't know why she's doing this and what's going on. And why is this woman taking pictures of our children? And rightfully, so as parents, you're concerned about what's going on. So I don't think she ever looked, I'm sorry. And then at page 81. And again, he did not do any investigation because if he had bothered talking to Ms. Khoury when she kept telling him, why did you open the gate? Because you don't have authority to open the gate. He did testify that, in fact, he found out after the fact that, in fact, the gates were supposed to be closed, correct? Well, that's correct that he understood after the fact that there had been an agreement. Does an officer not have a duty to investigate? Is that not something that precludes then probable cause or arguable probable cause the failure to investigate properly? No, Your Honor. The fact that there may be disputed issues of fact or that the officer may not have had everything right does not mean that there was an arguable probable cause under all of the circumstances. There's an 11th Circuit case, Howard v. Gee, officers failed to take even the most basic investigatory steps. The question of arguable probable cause cannot be decided at the summary judgment stage. Officer Williams was concerned because he heard from Ms. Zubiaga and from the other witnesses that she was videotaping. Again, how is videotaping a threat that you are going to harm someone or harm yourself? Do you not have a First Amendment right to videotape? There is a First Amendment right to videotape. The complaint was that she was being aggressive and combative. And what the other residents testified was, I do recall someone saying several times that she was out there, you know, and they would ask her to stop and she would get in their face. And, you know, several of them said that they were even afraid of her. So that is the context in which the officer arrives. Well, my identification of the dispute of fact that seems pretty material to me is that Judge Scola, you know, acknowledges that Ms. Corey says she did not push Officer Williams. Officer Williams said she did. And that part of the encounter is not on videotape, right? It is not. Yeah. So why isn't that a dispute of fact that needs to be decided by a jury? Well, I think Judge Scola was very careful to look at the testimony and say... And weigh it. Well, no, I don't think so, Your Honor. I think what he did is he said, taking the evidence in the light most favorable to the plaintiff, even assuming that Officer Williams... Well, he said that, but he didn't do it, did he? Because at the end of the day, you can't say objectively something, the video shows something, and then say and disregard it. That's a credibility finding. That's putting your thumb on the scale. I don't think there's anything in the video that... This is not on the video. ...that Judge Scola disregarded. ...as to whether or not Officer Williams pushed her. Correct. And Judge Scola acknowledged that. He acknowledged that. He said there's a dispute as to whether Ms. Currie pushed Officer Williams. He says, although there's a dispute, there's another eyewitness supporting the claim that Ms. Plaintiff Currie did push him. So in essence, what he did is he said, okay, she said this, but there's another eyewitness who said X. So I'm going to believe the eyewitness, and I'm going to believe the officer, as opposed to believing no one because I am not the trier of fact. Respectfully, Your Honor, the very next sentence of the opinion says, even putting that aside, there was arguable probable cause. The standard is arguable probable cause, and whether taking all of the undisputed facts into account, a reasonable officer in Officer Williams' position could have concluded there was probable cause. So you have a situation... If I'm Ms. Currie, I would say that the facts in the light most favorable to me are I'm really frustrated about this continuing situation with the ball fields near my house. I saw people illegally parked or violating certain agreements that I thought I'd reached, so I went out to video those people. At some point, they called the police. As I was asking the police officer to identify himself, he approached me, he pushed me down, and then he arrested or Baker-acted me in a way that led to my needing surgery on my arm. If those are the facts in the light most favorable to Ms. Currie, how does this not go to a jury? Well, Your Honor, there's a little bit more to it than that. The witnesses, including Ms. Zubiaga and the other witnesses, told the officer that Ms. Currie was behaving in an aggressive or combative or threatening way, okay? Not just that she was videotaping, but that she was aggressive and combating. There is not one single evidence. The issue here is, was she a harm to herself or a harm to others? And there is not any evidence in this record other than her being the female Larry David, okay? And angry. But there is no evidence. Did she make any verbal threats to them? No. Did she spit at anyone? Did she hit anyone? Did she verbally say to anyone, I'm going to kill you? No. Saying to someone, I can videotape you because when you read the affidavit of Ms. Zubiaga, because that's what she said, I asked her to stop videotaping me and she said no. And she was not nice in her response. There's case law in the state of Florida that being belligerent and even aggressive are not grounds to be Baker-acted. There has to be more. The indicia has to be, you are a harm to yourself and a harm to others. Your Honor, if you take a look, and what I've been trying to explain is that if you start from the beginning of the encounter, from the time that Officer Williams arrives, he is told by several residents that Ms. Khoury is acting in a threatening way. That is the context. By videotaping people. By being aggressive and combative about it. Videotaping people. That's what the evidence shows. For example, with respect to Ms. Zubiaga, and by the way, there's a long record of the police having received complaints over the years about Ms. Khoury and that she had several aggressive confrontations with residents. That is in the record. Now, what Officer Williams knew is that these witnesses and these residents complained to him when he arrived about Ms. Khoury's behavior and that they were concerned. Before you run out of time, I'd actually like to ask you a question about something where you may end up getting more mileage. Let's assume, for purposes of argument, that there was a policy in 2012 related to Baker acting instead of resting. I'm not asking you to concede that there really was one, but let's presume that there was such a policy. How much evidence would you need to show that that policy still existed? What evidence would Ms. Khoury need that she doesn't have to show that that policy still existed at the time of her detainment? Well, she would have to show that the police department or that the school board exhibited a deliberate indifference to that and didn't take corrective measures. So what we do know is that, assuming that there was some issue in 2012, that there were three separate investigations, one by the FDLE, another one by the acting chief of police, Kitchell, a third one by the new chief of police, Moffitt. They all investigated whether there was improper use of Baker acting with students and they concluded that, in fact, there was not. In fact, what was really going on at the time is that there was a concern about mental health and the school board was concerned about making sure that they properly took that into account when they were dealing with students. However, even assuming there was a problem, the chief of police, Moffitt, instituted additional training and safeguards to make sure that his officers were doing things the right way. And in fact, there was a 64% decrease in the amount of Baker acts from 2012 to 2015. And the record is undisputed, that Chief Moffitt, since 2013, has never received a single complaint about improperly Baker acting students. Second, the record is undisputed. Or sorry, the record testimony makes abundantly clear that the Baker act incidents since 2013 were fully justified. The deposition testimony fully supports the findings and I will read, if I could... And you can wind it up as you do. Sure. In the initial brief, the appellant argues that the deposition testimony, and by the way, he took over 40 depositions or around 40 depositions, so the argument... By the way, doesn't sound like winding up. Sorry, that he didn't have enough time. Here's the testimony of one of the witnesses at one of the incidents, Anthony Tunson. He was in an uproar. What was he saying or doing? He was saying, I'm gonna get you, I'm gonna hurt you. To who? The teacher. The teacher was the only one who to get. And so the deposition testimony is fully consistent with the Baker act incidents reports that were produced to the plaintiff. So even if there was a policy back in 2012, it had been addressed, it had been corrected, and it had nothing to do with adults. It had to do with students during school. Thank you. Your honor. May it please the court. I wanna correct something that opposing counsel stated. At the end of the encounter, before the encounter actually started, when Ms. Zubilaga's video kicked on, Officer Williams said that I am going to Baker act you. He said that from the very beginning. So all the things that they claim happened where she was screaming and kicking on the ground, he had already made that determination. And I think that that is something to that's very important in this particular case. Also, as far as what the other witnesses told Officer Williams, this is on docket entry 151-6, page 25, lines three through seven. Officer Williams testified that he did not speak to anyone other than Zubilaga before he decided to Baker act Ms. Corrie. So the lower courts finding that multiple people complained about Ms. Corrie filming individuals and he had talked to multiple witnesses is clearly refuted by the record. Also, his claim, Officer Williams' claim is completely disingenuous because he said, and he testified to the fact that he told Ms. Zubilaga that Ms. Corrie had the right to film. So I don't believe that your honor is required when you take de novo review of that particular fact to just take him at his word that he spoke to all these people. If you look at the recordings, there are not a lot of people who are actually around in this particular case. As far as the policy is concerned or customer practice, they cannot raise a privacy right and say that there's a right to privacy, but then preclude us from gaining the very same information that we need for that particular case. What about the 40 depositions? What's your response to that point?  I was provided with over 40 depositions. 5,800 Baker Act reports. And you have to please keep in mind that I didn't have the right to speak to anyone. I couldn't talk to the school board employees first because they're employees of the school board. I didn't have the parents' contact information. I was deprived of basic discovery on my own to try to figure out what happened. So I'm basically at a witch hunt. I'm trying to find a needle in a haystack for lack of a better term. But the reality of it is that when I did take those depositions, there was very troubling information that was found. For example, two assistant, well, a principal and an assistant principal basically said that the information in the Baker Act report was flat out not true, where this kid claimed that he was going to kill two individuals with a gun. And the reason why that's important is because they made a mistake and did not provide the unredacted copy of that report. And I was able to ask the principal and the assistant principal about that particular incident. And the reason why they were so adamant that that was never said because they said that they knew that student. They knew who he was and he never said anything like that. And they will remember if he says something like that. So one thought that I had was, it seems that the policy, as I understand that it's alleged, was that the school would Baker Act students rather than arresting them in order to keep crime statistics down. But it sounds like that allegation is more that the allegations are completely false. Not that the student should have been arrested rather than Baker Acted, but just that nothing should have happened at all, which is a little bit, it's a little bit different than the policy that you've alleged. Well, I believe that regardless of the reason why they were doing it, at the end of the day, they were doing it. The policy is that they were Baker Acting people who did not qualify. To answer your other question, as far as the number of depositions that were taken, I had an opportunity to take the depositions. And if you look at the, if you recall in the transcript, I asked the magistrate, as far as the number of depositions, because I tried to explain to her that this is a wise for a practice of constitutional violations. She gave me the ability to take some depositions in the beginning. She gave me the ability to only take 10 depositions before Ms. Corey's incident. In two out of those incidents, I found that there were serious problems and we actually put that in the record. I understand that I am running out of time. And I see Judge Mark- Like that past tense. Judge Martin gave me that look and I will respectfully request that you reverse summary judgment and equally important, reverse the ruling regarding Mrs. Corey's ability to have access to the unredacted Baker Act reports. Thank you. We appreciate the presentation. Court is in recess until nine o'clock tomorrow morning. Thank you.